IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
ALLYCE K. ARNOLD,

          Plaintiff,
                                        CIVIL ACTION NO.
v.                                      1:12-cv-3820-JEC

J.P. MORGAN CHASE BANK, N.A.,
CITIBANK, N.A., and MCCURDY &
CANDLER, LLC,

          Defendants.
```

**ORDER & OPINION**

This matter is before the Court on plaintiff Allyce K. Arnold's emergency motion for a temporary restraining order [2] and defendants J.P. Morgan Chase Bank, N.A. ("Chase") and Citibank N.A.'s ("Citibank") and McCurdy & Candler, LLC's ("McCurdy & Candler") (collectively, "defendants") motions to dismiss Arnold's complaint [3, 6]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's emergency motion for a temporary restraining order [2] should be **DENIED WITHOUT PREJUDICE** and defendants' motions to dismiss [3, 6] should be **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.**

**BACKGROUND**

This case arises out of foreclosure proceedings defendants instituted with respect to a residence located at 904 Fox Hollow Way in Marietta, Georgia (the "Fox Hollow residence"). On October 17, 2005 plaintiff executed a promissory note with Opteum Financial Services and a security deed with Mortgage Electronic Registration Systems ("MERS") in its capacity as a nominee for Opteum in order to purchase the Fox Hollow residence. (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶¶ 8-11; 2012 Action, Mot. to Dismiss [3] at Ex. A (R&R), at 2.)[1] The last payment Plaintiff made on her loan was on February 26, 2009, at which point she was already a year in arrears after failing to make any other payments since February of 2008. *See Arnold v. Citibank N.A. and EMC Mortg. Corp.*, Civil Action No. 1:10-cv-2263-JEC, Mag J.'s R&R [12][2] (hereinafter "the 2010 Action").

EMC Mortgage Corporation ("EMC"), the servicer of plaintiff's loan, initiated foreclosure proceedings with respect to the Fox Hollow residence and established a sale date of July 6, 2010. Plaintiff responded by filing a complaint in the Superior Court of

---

[1] The present case, Docket No. 1:12-cv-3820, will be referred to as the 2012 Action.

[2] A copy of the magistrate judge's report and recommendation in the 2010 Action is also attached as Exhibit A of defendants' Notice of Removal [1] in the present case.

2

Fulton County on June 17, 2010 alleging violations of the Truth in Lending Act ("TILA") and state law claims based upon fraud and promissory estoppel. EMC suspended the foreclosure proceedings as a result.[3] (2010 Action, Resp. in Opp'n [4] at Ex. A (Decl. of EMC), ¶ 3.)

On July 12, 2010 MERS assigned the security deed to Citibank. (2012 Action, Mot. to Dismiss [3] at Ex. B (Assignment).) EMC subsequently removed plaintiff's action to this Court where the case was referred to Magistrate Judge Johnson for pre-trial proceedings. (2010 Action at [1].) Following the filing of a motion to dismiss by EMC and Citibank Judge Johnson issued a final and very thorough Report and Recommendation ("R&R"). Specifically, as to plaintiff's federal TILA claims, requesting rescission of her mortgage agreement and damages, the magistrate judge recommended dismissal with prejudice, noting that any such claims were time-barred. (2010

---

[3] It is not clear when, but at some point, Chase became the servicer of the mortgage at issue. (*Compare* 2012 Action, Mot. to Dismiss [3] at Ex. D (Notice of Acceleration & Sale) *with* 2010 Action, Resp. in Opp'n [4] at Ex. 4 (Notice from EMC).) The confusion likely stems from the fact that EMC was a subsidiary of The Bear Stearns Companies, LLC until 2008, when Chase became one of the trustees for certificate holders of Bear Stearns Mortgage Backed Securities I, LLC. *See* Company Overview of EMC Mortgage LLC, Bloomberg Businessweek (Sept. 24, 2013 9:27 AM) http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=1833007. Adding to the confusion is EMC's synonymous use of "Chase" in the first action when referring to itself. (*See* 2010 Action, Resp. in Opp'n [4].)

AO 72A
(Rev.8/82)

Action, R&R [12] at 6-9.)  As to plaintiff's various state-law claims, the magistrate judge noted that the plaintiff's pleadings did not give rise to a claim for these state law actions.  Nonetheless, the magistrate judge recommended dismissal without prejudice, which meant that plaintiff would not be foreclosed from bringing a new action asserting these state law claims.[4]  (2010 Action, R&R [12] at 17.)

     The undersigned adopted the magistrate judge's R&R in October 2010, dismissing with prejudice the federal TILA claim and dismissing without prejudice plaintiff's state law claims.  (2010 Action, Order Adopting R&R [13].)

     This case has found its way back to this Court because on September 25, 2012, Citibank again instituted foreclosure proceedings on the Fox Hollow residence and established a sale date of November 6, 2012.  Plaintiff again filed suit in state court, naming Chase, Citibank, and McCurdy & Candler as defendants and seeking declaratory and injunctive relief.  For the most part, plaintiff asserted only state law claims (fraud and promissory estoppel).  (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶¶ 41-101.)

     Defendants Chase and Citibank, with McCurdy & Candler's consent,

---

[4] As to plaintiff's state-law foreclosure sale claims, the magistrate judge held that these were not ripe because EMC had suspended the proceedings when plaintiff filed her complaint in 2010. (2010 Action, R&R [12] at 10.)

removed this action based on diversity and federal question jurisdiction. (2012 Action, Notice of Removal [1] at ¶¶ 8-23.) In asserting federal question jurisdiction, defendants stated that plaintiff had asserted federal claims because in her complaint and motion for temporary restraining order, plaintiff has alleged violations of "numerous federal laws, including the Federal Trade Commission Act, the U.S. Constitution, the Truth in Lending Act, and the Real Estate Settlement Procedures Act." (*Id.* at ¶ 23.)  Yet, upon reviewing the complaint, it is difficult to confirm that all such claims have been raised, as discussed *infra*.

Prior to defendant's removal, plaintiff had additionally filed a motion in state court for an emergency temporary restraining order forbidding defendants from foreclosing on her residence, which is listed on the docket as now pending before this Court. (*Id*. at [2].) Finally, after removal, the Bank Defendants (J. P. Morgan Chase Bank and Citibank) filed a motion to dismiss [3], as did the defendant law firm, McCurdy & Candler [6].

## DISCUSSION

### I.  MOTION TO DISMISS STANDARD

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true and construes the facts in favor of the plaintiff. *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010).  That said, in order to avoid dismissal a complaint "must

5

contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "facial[ly] plausib[le]" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Arnold is a *pro se* plaintiff, she is given some latitude in her pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.") This latitude is not unlimited, though. The Court may not "serve as de facto counsel for a party, or [] rewrite an otherwise deficient pleading in order to sustain an action." *In re Unsolicited Letters to Fed. Judges*, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000)(Edenfield, J.)(quoting *GJR Invs., Inc. v. Cnty. of Escambir, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Further, *pro se* plaintiffs must still comply with procedural rules. *Thomas v. Am. Tobacco Co.*, 173 F.R.D. 546, 547 (M.D. Ga. 1997)(Owens, J.)(citing *Moon v. Newsome*, 863 F.2d 835 (11th Cir. 1989)).

6

## II. **FEDERAL QUESTION JURISDICTION**

As noted, defendants have asserted federal question jurisdiction stating that plaintiff's complaint asserts violations of TILA and the Federal Trade Commission Act, and that her state motion for a temporary restraining order asserts a violation of the federal RESPA statute against defendants. (2012 Action, Notice of Removal [1] at ¶¶ 22-23 (citing 2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶¶ 39, 41 and 2012 Action, Notice of Removal [1] at Ex. B (Mot. for TRO), ¶¶ 7, 9-10).)

In point of fact, it is not altogether clear that plaintiff was attempting to assert all of the above federal claims in her complaint. The Court will assume that she was attempting to allege in her complaint a TILA claim and a claim under the Federal Trade Commission Act. These claims are discussed below. Yet, as to defendants' claim that plaintiff alleges a Constitutional violation, the Court can discern no such claim. Defendants apparently draw this inference based on plaintiff's discussion of standing, in which she uses the term "Constitutional" twice. Yet, she never alleges a Constitutional violation. (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶ 41.)

As to any possible RESPA claim by plaintiff, she never mentions the statute in her complaint. Instead, defendants apparently infer such a claim based on a statement that plaintiff makes in the TRO

7

motion that she filed in state court, simultaneously with the filing of her complaint there.  In that motion, plaintiff states that defendants "have a fiduciary duty and obligation to perform upon notice of rescission by cancelling the Transaction" and that "[a]ny further acts to enforce an invalid security instrument are wrongful, improper, and a serious breach of the fiduciary duty associated with Defendants obligations.  Such acts violate TILA and RESPA, and are contrary to the explicit statutory requirements and contract between the parties."  (2012 Action, Notice of Removal [1] at Ex. B (Mot. for TRO), ¶¶ 7, 9-10.)  From this, defendants apparently infer a RESPA claim.

The Court disagrees.  The main hint that plaintiff does not intend to make a RESPA claim is the fact that she never included such a claim in her 24-page complaint.  For sure, any review of plaintiff's complaints reveals that brevity is not one of her goals. In other words, had plaintiff wanted to make a RESPA claim, she would not have been content to rely on only a brief and cryptic mention of that statute in a TRO motion.  Indeed, it is unlikely that plaintiff would have been trying to assert federal claims, as she has shown no desire to be in federal court, having twice filed her complaints in state court, only to have them removed by the defendants each time. Bolstering that inference is the fact that all of plaintiff's present eight counts revolve around wrongful foreclosure or fraud.  She

8

clearly intends to assert these state law claims, not claims based on random federal statutes in a TRO motion.

Further, a RESPA claim would be anomalous as RESPA's purposes are to:

> effect certain changes in the settlement process for residential real estate that will result--(1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b). In other words, RESPA is aimed at facilitating a smooth and informed mortgage procedure by providing the borrower with information and by prohibiting exorbitant fees.  It has nothing to do with foreclosure procedures. Yet, the crux of plaintiff's lawsuit here is that defendants do not have standing to foreclose with respect to the Fox Hollow residence, *not* that she has had problems with escrow, payment of fees for mortgage procedures, or any other malady that RESPA seeks to cure.  Not surprisingly, then, the unexplained reference to the RESPA statute in plaintiff's motion for a TRO offers no notice of what a RESPA claim might entail.

In summary, the Court will assume that the only possible sources of federal question jurisdiction lie in a TILA claim or a Federal Trade Commission Act claim that might be lurking in plaintiff's

9

complaint in this 2012 Action, and will address each in turn. 28 U.S.C. § 1331; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807-10 (1986).

### A. Plaintiff's TILA Claims

Plaintiff alleges that defendants violated TILA by lending her money at a lifetime annual percentage rate higher than that permitted by the statute, that they are required to rescind her loan and refund any payments she has made, and that they are seeking to enforce an invalid security deed. (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶ 9; 2012 Action, Mot. for TRO [2] at ¶¶ 7, 9-10.) As the magistrate judge explained in the 2010 Action, plaintiff's TILA claims are barred by the statute of limitations. Indeed, this Court has already dismissed those claims with prejudice in that previous action.[5] But to explain again: under TILA, a loan can be rescinded within a three-day period from the date of the transaction. 15 U.S.C. § 1635(a). This period is extended to three years if the lender does not comply with the notice requirements of 12 C.F.R. § 226.23(a)(3). *Smith v. Highland Bank*, 108 F.3d 1325, 1326 (11th Cir. 1997). A claim for damages under TILA has a one-year statute of limitations that is subject to equitable tolling. 15 U.S.C. §§ 1635, 1640; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 419 (1998); *Ellis*

---

[5] For reasons unclear to this Court, the defendants did not move to dismiss the TILA claim on *res judicata* grounds.

10

*v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706-08 (11th Cir. 1998); *Goldman v. Aurora Loan Servs., LLC*, Civil Action No. 1:09-CV-3337-RWS, 2010 WL 3842308, *3 (N.D. Ga. Sept. 24, 2010)(Story, J.).

Assuming *arguendo* that defendants did not comply with TILA's notice requirements, plaintiff's claim for rescission expired in 2008, as she executed her loan in 2005. (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶ 9.) With respect to any claim for damages, assuming *arguendo* that defendants concealed their alleged TILA violation, plaintiff obtained a forensic mortgage evaluation in 2010 giving her knowledge of any wrongdoing and as such any suit against defendants for civil liability under TILA expired in 2011. *See* (2010 Action, Notice of Removal [1] at Ex. B (Compl.), at 47-50 (Forensic Mortgage Audit Rep.)) and *Webb v. Suntrust Mortg., Inc.*, Civil Action No. 1:10-CV-0307-TWT-CCH, 2010 WL 2950353, *3-4 (N.D. Ga. July 1, 2010)(Hagy, J.), *adopted by,* 2010 WL 2977950 (N.D. Ga. July 23, 2010)(Thrash, J.). Plaintiff's TILA claim is thus barred and is hereby, once again, **DISMISSED WITH PREJUDICE.**

**B. Plaintiff's Federal Trade Commission Act Claim**

Plaintiff also alludes to the Federal Trade Commission Act in her Complaint. She claims that "Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the Borrower of a loan transaction in violation of the Federal Trade Commission Act." (2012 Action, Notice of Removal

11

[1] at Ex. B (Compl.), ¶ 39.) However, no private cause of action exists under the Federal Trade Commission Act. *Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 Fed. App'x 891, 894 (11th Cir. 2006)("There is no private cause of action implied under the Federal Trade Commission Act."), *cert. denied*, 550 U.S. 945 (2007); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 n.6 (5th Cir. 1977)(citing *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986 (1973)). Plaintiff's Federal Trade Commission Act claim thus fails and is hereby **DISMISSED WITH PREJUDICE**.

### III. DIVERSITY JURISDICTION

In addition to her federal claims, plaintiff also alleges various state law claims. The Court would ordinarily remand these claims to state court after dismissal of the federal claims because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, however, defendants also claim that this court has jurisdiction over plaintiff's state law claims on the basis of diversity. Defendants acknowledge that the defendant law firm, McCurdy & Candler, is a Georgia resident, as is plaintiff, meaning

12

that complete diversity of citizenship appears to be lacking. Yet, defendants argue that plaintiff fraudulently joined McCurdy & Candler for purpose of defeating diversity jurisdiction. If that is so, defendants argue, then this defendant must be disregarded for purposes of determining whether the parties are completely diverse.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The party claiming fraudulent joinder must prove it by clear and convincing evidence. *Stillwell v. Allstate Inc. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). A defendant is fraudulently joined "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs*, 154 F.3d at 1287.

To determine whether there is a possibility of a cause of action, the reviewing court must follow the forum state's pleading standards. Here those standards are found in Georgia law, which sets less stringent pleading requirements than are applied under the federal Rule 12(b)(6) standard. *See Ullah v. BAC Home Loans Serv. LP*, ___ Fed. App'x ___, No. 12-12557, 2013 WL 4267188, *2 (11th Cir. Aug. 16, 2013). In Georgia, the plaintiff need not plead "a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action" against that

13

defendant. *Trigg,* 154 F.3d at 1287. Further, "fair notice of the nature of the claim is all that is required, and the elements of most claims can be pled in general terms." *Ullah*, 2013 WL 4267188, at *2 (citing *Bush v. Bank of N.Y. Mellon*, 313 Ga. App. 84, 89 (2011)).

In *Ullah,* the Eleventh Circuit held that a non-diverse law firm defendant was not fraudulently joined because the plaintiff sufficiently alleged collection of excess fees by the law firm and loan servicers even though the plaintiff did not specifically refer to the law firm by name. *Id.*, at *3-4. Consequently, the court found that the defendants had not proven fraudulent joinder and that diversity jurisdiction was lacking. For this reason, it vacated the district court's order granting defendants' motions to dismiss and directed a remand of the action. *Id.*, at *4.

In this case, it is less clear whether defendants should lose on a claim of fraudulent joinder under the *Ullah/Stillwell* standard. Plaintiff only refers to McCurdy & Candler once in her complaint, alleging that it is prohibited from working with Fannie Mae and Freddie Mac, that it is subject to national foreclosure fraud proceedings, and that it aided and abetted foreclosure of her residence. (2012 Action, Notice of Removal [1] at Ex. B (Compl.), ¶ 15.) Her other allegations do not allege any tortious conduct by the law firm.

Yet, as indicated in *Ullah*, this Court should give plaintiff an

14

opportunity to amend her allegations to determine whether there is no possibility that plaintiff can prove a cause of action against the non-diverse defendant, McCurdy & Candler.  Plaintiff is therefore **ORDERED** to restate her claim against McCurdy & Candler in order to try to meet the "possibility of stating a cause of action" standard,[6] by **TUESDAY, OCTOBER 15, 2013**.  *See* FED. R. CIV. P. 12(e).  In doing so, plaintiff should state clearly what her claim is against this law firm and what facts she alleges to believe that such a claim against the firm is viable.

Defendants will then have until **THURSDAY, OCTOBER 31, 2013,** either to reassert, and adequately explain, its basis for arguing for that it has can show fraudulent joinder by clear and convincing evidence, or to indicate that it no longer so contests the joinder of this defendant.  Absent a showing by defendants of fraudulent joinder, plaintiff's state law claims will be remanded to the court in which she originally filed her lawsuit.

---

[6] Plaintiff is also free to attempt to state a viable RESPA action in this amended complaint, if she chooses.  That course of action would not, however, seem wise for the plaintiff as it would likely keep her in federal court, where she apparently does not wish to be.

**IV.  PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

As noted above, when filing her complaint in state court, plaintiff also filed an emergency motion requesting a "restraining order or an ex parte temporary restraining order" prohibiting defendants from conducting a foreclosure sale.  (2012 Action, Mot. for Temporary Restraining Order [2].)  In order to obtain a temporary restraining order, a plaintiff must show (1) a substantial likelihood of ultimate success on the merits; (2) that the temporary restraining order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) that the temporary restraining order would serve the public interest.  *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995).

Here, plaintiff has shown no likelihood of success.  The federal claims in her first complaint were dismissed with prejudice.  She has recycled her state-law claims, which appear to have little merit. Further, she has failed to show irreparable injury or that an injunction would serve the public interest.  As stated above, plaintiff quit making her mortgage payments over 5 1/2 years ago.[7] Assuming that the defendants have again delayed foreclosure based on her lawsuit, plaintiff has presumably been living rent-free for that

---

[7]  As noted, she made only one payment in the interim period, approximately four and one-half years ago.

16

entire period of time. She has been able to maintain this advantageous arrangement only because she has filed a legal action whenever the defendants seek foreclosure. Yet, as noted, up to this point, there has been scant showing that there is any merit to these legal actions. For these reasons, the granting of injunctive relief to stop any foreclosure action against plaintiff would not be equitable. Accordingly, plaintiff's motion for a temporary restraining order is **DENIED**. *See Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1336 (N.D. Ga. 2005) (Martin, J.) (denying temporary restraining order for failure to show likelihood of success on the merits).

## CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** plaintiff's emergency motion for a temporary restraining order [2] and **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** defendants' motions to dismiss [3, 6]. Plaintiff is ordered to restate her claims against McCurdy & Candler by **TUESDAY, OCTOBER 15, 2013**. Defendants are ordered to respond to plaintiff's restated claim and to show fraudulent joinder by **THURSDAY, OCTOBER 31, 2013**.

SO ORDERED, this <u>29th</u> day of September, 2013.


                                <u>/s/ Julie E. Carnes</u>
                                JULIE E. CARNES
                                CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)